# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **AARON BURNETTE,** | ) | **CASE NO. 5:11cv2361** |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **JUDGE SARA LIOI** |
| vs. | ) | |
| | ) | |
| **UNIVERSITY OF AKRON, et al.,** | ) | **MEMORANDUM OF OPINION** |
| | ) | **& ORDER** |
| DEFENDANTS. | ) | |
| | ) | |
| | ) | |

Before the Court are the following motions:

(1)  a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 14) filed by defendants The University of Akron (the "University"), Paul Callahan ("Callahan"), Marling "Newt" Engle ("Engle"), Sidney C. Foster ("Foster"), and William Viau ("Viau") (collectively the "University defendants"); and

(2)  a motion to dismiss pursuant to Rule 12(b)(6) (Doc. 15) filed by defendant Thurston L. Cosner, Ph.D. ("Dr. Cosner").

Plaintiff Aaron Burnette ("plaintiff" or "Burnette") has filed briefs in opposition to the motions. (Docs. 18, 19), to which the University defendants and defendant Dr. Cosner have filed replies. (Docs. 16,[1] 21, 22.) These matters are ripe for disposition. For the reasons that follow, the motions are **GRANTED** and this case is **DISMISSED**.

---

[1] The University defendants originally filed their reply brief on February 2, 2012 (Doc. 16), noting that plaintiff had failed to file a response in opposition to their motion to dismiss. On February 6, 2012, however, the Court granted

## I.    BACKGROUND

Plaintiff filed this action on November 1, 2011, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. and 42 U.S.C. § 1983.[2] (Doc. 1.) The University defendants moved to dismiss the complaint. (Doc. 11.) In response, plaintiff filed an amended complaint. (Doc. 13.)[3]

As alleged in the amended complaint, the University of Akron Police Department employed Burnette as a police officer for fifteen years. (Am. Compl. ¶ 13.) The University terminated Burnette on September 30, 2009 for his alleged use of excessive force. (*Id.* ¶ 14.) An arbitrator later ruled that the University did not have just cause for the termination and ordered the University to return Burnette to work with full back pay and benefits. (*Id.* ¶ 15.)

On September 7, 2010, the University returned Burnette to the payroll, and Callahan, the University's Chief of Police, ordered Burnette to complete a "pre-hire" medical examination and a psychological evaluation. (*Id.* ¶¶ 17-18.) Burnette alleges that the arbitrator had not required him to complete any type of medical or psychological testing prior to his

---

plaintiff leave to file his opposition brief. Plaintiff subsequently filed his response (Doc. 19) to the University defendants' motion to dismiss on February 7, 2012, to which the University defendants replied (Doc. 21) on February 23, 2012.

[2] Plaintiff also invokes the Civil Rights Act of 1964, 42 U.S.C. § 1981, *et seq.* "It is well-settled that § 1981 redresses only racial discrimination[.]"*Ana Leon T. v. Fed. Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *White v. Wash. Pub. Power Supply Sys.,* 692 F.2d 1286, 1290 (9th Cir.1982); *Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266, 1268 (6th Cir. 1977)). As a matter of law, plaintiff has not stated a claim under § 1981. Further, since the amended complaint contains no allegations of discrimination on the basis of race, plaintiff has voluntarily dismissed any such claim. *See*, Doc. No. 13.

[3] In light of the filing of the amended complaint, the University defendants' original motion to dismiss (Doc. 11) is **DENIED AS MOOT**.

reinstatement and that his medical ability to perform his duties had never been questioned prior to his return to return to work. (*Id*. ¶¶ 16, 19.)

On September 9, 2010, Callahan and Engle, the Assistant Chief of Police, instructed Burnette to complete his "pre-hire" medical examination at Summa Health Systems, St. Thomas Hospital. (*Id*. ¶ 18.) As part of the examination, Burnette was asked to sign a medical release form allowing the University to receive the results of the examination. (*Id*. ¶ 20.) When Burnette refused to sign the release, Engle told him that he would be terminated if he did not sign the release. (*Id*. ¶ 21.) Burnette subsequently signed the release, noting beside his signature that he was signing "under protest and by orders of Deputy Chief Newt Engle." (*Id*. ¶ 22.) Burnette was also ordered to submit to a Hepatitis B vaccine and similarly signed the consent for vaccination "under protest" and "by orders" of Engle. (*Id*. ¶ 23.) Burnette contends that he had already received a Hepatitis B vaccine and that the additional inoculation was not medically necessary. (*Id*.) Approximately two weeks later, Engle also ordered Burnette to undergo a cardiovascular stress test and an electrocardiogram ("EKG") at Akron City Hospital. (*Id*. ¶ 24.)

On October 29, 2010, Burnette was ordered to complete a psychological fitness for duty examination with Dr. Cosner, a licensed psychologist who is "periodically employed as an agent" of the University. (*Id*. ¶¶ 11, 25.) Dr. Cosner advised Burnette that he was required to sign a voluntary release form permitting the release of his medical records to the University. (*Id*. ¶ 26.) Burnette first called Callahan, who ordered him to sign the release and told him that he could note his protest on the form, as he had with the previous medical consent and release forms. (*Id*. ¶¶ 28-29.) Burnette informed Dr. Cosner that Callahan had ordered him to sign the release and that he would be charged with insubordination and terminated if he did not do so. (*Id*.

3

¶ 30.) Dr. Cosner accepted the release form and completed the psychological testing. (*Id*. ¶ 32.) Subsequently, Dr. Cosner presented to Engle a report of the examination, which included Burnette's medical information and concluded that Burnette was fit for duty without restriction. (*Id*. ¶ 33.) Engle shared Dr. Cosner's report with Viau, the Interim Co-Director of Human Resources for the University; Foster, the Assistant Vice President and Associate General Counsel for the University; and Callahan. (*Id*. ¶ 34.) The report was also presented to the University's Human Resources department and was allegedly stored on Callahan's and Engle's email accounts and/or computers. (*Id* ¶¶ 34, 65.)

On January 27, 2011, Burnette filed a complaint with the Equal Employment Office of The University of Akron, as required by the University's EEP rules. (*Id*. ¶ 35.) On April 14, 2011, the University's EEO office concluded that there had been no violations of the ADA or University policies. (*Id*. ¶ 36.) On April 26, 2011, Burnette filed a complaint with the Equal Employment Opportunity Commission ("EEOC") office in Cleveland, Ohio. (*Id*. ¶ 37.) On August 10, 2011, the EEOC issued a "right to sue" letter to Burnette. (*Id*. ¶ 28.)

Based on the foregoing factual allegations, plaintiff asserts the following claimed violations of the ADA and § 1983: (1) discrimination by the University in requiring medical testing of a current employee; (2) unlawful demand for a medical release by Cosner, Callahan, and Engle; (3) dissemination of confidential medical information by Cosner, Callahan, Foster, Viau, and Engle, which was ratified by the University; and (4) improper storage of confidential medical information by Callahan, Engle and the University. Plaintiff also alleges state law claims for invasion of privacy against all defendants and battery against Callahan and Engle. The

4

amended complaint names the individual defendants in their official and personal capacities. Burnette seeks injunctive relief and compensatory and punitive damages.

## II.      STANDARDS OF REVIEW

### A.  Rule 12(b)(1)

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990). *See also, DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). *See also, Kusens v. Pascal Co.,* 448 F.3d 349, 359 (6th Cir. 2006) ("federal courts are under an independent obligation to examine their own jurisdiction").

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990); *Smith v. Encore Credit Corp.,* 623 F. Supp. 2d 910, 914 (N.D. Ohio 2008). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie,* 15 F.3d at 598; *Moir,* 895 F.2d at 269; *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1135 (6th Cir. 1996). Here, the

5

University defendants attack the facial sufficiency of the amended complaint based on the legal doctrine of Eleventh Amendment immunity; thus, the applicable standard of review is that employed under Rule 12(b)(6). *Ohio Nat'l Life Ins.*, 922 F.2d at 325.

### B. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

### III.    DISCUSSION

### A.  Federal Claims

Counts one through four of the amended complaint allege various violations of the ADA and § 1983 against the University and the individual defendants in their official and personal capacities. The University defendants have moved to dismiss Burnette's federal claims on the following grounds: (1) the claims against the University and the individual defendants in their official capacities are barred by the Eleventh Amendment; (2) the claims against the individual University defendants in their personal capacities fail because, under the ADA, no individual liability attaches; and (3) § 1983 provides no cause of action for claims arising under the ADA. Defendant Dr. Cosner also seeks dismissal of Burnette's federal claims, arguing that: (1) he cannot be held individually liable under the ADA, nor is he an "employer" or "covered entity" under the ADA; (2) Burnette has failed to exhaust his administrative remedies against Dr. Cosner; (3) his conduct did not violate the ADA; and (4) § 1983 provides no independent cause of action for ADA claims, nor is there a federal right to privacy in one's medical records.

### 1.  *Eleventh Amendment Immunity*

Burnette concedes that the Eleventh Amendment bars his Title I ADA claims against the University and his official capacity ADA claims against the individual defendants for monetary damages. [4] *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) ("Because Title I did not abrogate the states' Eleventh Amendment immunity, individuals may not sue states for money damages under Title I.") (citing *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 374 (2001)); *see also*, *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999) ("When the relief sought is

---

[4] (Doc. 18 at 2, 4, 5; Doc. 19 at 2, 5, 6.)

. . . money damages, and thereby significantly implicates the governmental entity itself . . . the official capacity claim . . . is deemed to be against the State whose officers are the nominal defendants, [and] the claim is barred by the Eleventh Amendment.") (quoting *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994) (internal quotation marks omitted). Therefore, as far as the amended complaint seeks monetary relief under the ADA against the University and the individual defendants in their official capacities, plaintiff's claims are dismissed.

Plaintiff argues, however, that the Court should not dismiss his official capacity claims against the individual University defendants or Dr. Cosner because he seeks prospective injunctive relief for Title I violations pursuant to *Ex parte Young*, 209 U.S. 123 (1908). Plaintiff states that the amended complaint seeks to enjoin future similar violations of the ADA by defendants and that he seeks an order compelling the University defendants to institute polices to prevent future violations of the ADA. The University defendants argue in reply that Burnette's amended complaint does not satisfy the *Ex parte Young* requirements because it fails to allege any continuing violations of the ADA. Similarly, Dr. Cosner argues Burnette's claim for injunctive relief fails because Burnette has not alleged that he is likely to be injured by Dr. Cosner in the future, or that Dr. Cosner continues to violate the ADA.

"An *Ex parte Young* action may be commenced only against a state official acting in her official capacity and may 'seek [only] prospective relief to end a continuing violation of federal law.'" *Whitfield*, 639 F.3d at 257 (quoting *Carten v. Kent State Univ.,* 282 F.3d 391, 395 (6th Cir. 2002)). "The question of whether a complaint contains an *Ex parte Young* action is determined on a claim-by-claim basis. *Id.* (citing *Ernst v. Rising,* 427 F.3d 351, 368 (6th Cir. 2005) (en banc) ("We consider Eleventh Amendment immunity, as well as any exceptions to it,

8

on a claim-by-claim basis.")). Here, the amended complaint does not meet the requirements of the *Ex parte Young* exception because it contains no allegations of a "continuing violation of federal law." *See Snodgrass v. Tenn. Dep't of Fin. & Admin.*, No. 3:10-0282, 2010 WL 4007218, at *4 (M.D. Tenn. Oct. 12, 2010) (The exception is narrow: . . . it applies only to ongoing and continuous violations of federal law, as opposed to cases in which federal law has been violated at one time or over a period of time in the past. . . . An actual controversy must exist at all stages, not merely at the time the complaint is filed.") (citations omitted). Burnette complains that he was subjected to improper medical and psychological examinations; that defendants ordered him to submit to an improper vaccination and medical testing; that defendants unlawfully demanded he execute several medical releases; and that a psychological report was improperly created, shared and stored. These events all occurred in the past, and none is alleged to be an ongoing violation of the ADA. Indeed, the amended complaint is devoid of any allegation that the individually named defendants continue to violate Burnette's rights under the ADA or that there is any threat of future illegal conduct by defendants. Therefore, Burnette has failed to satisfy the requirements of an *Ex parte Young* action, and his official capacity claims for injunctive relief will be dismissed as well. *See Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) (holding that a complaint "based entirely upon past acts and not continuing conduct, that if stopped, would provide a remedy to [the plaintiff]" does not "come under the doctrine of *Ex Parte Young*[.]"); *see also, Bailey v. Montgomery*, 433 F. Supp. 2d 806, 811 (E.D. Ky. 2006) (dismissing claim for injunctive relief where the complaint did "*not* involve a case of ongoing or threatened violations of federal law, and thus, there [was] no current or threatened illegal acts for [the] [c]ourt to enjoin.").

9

2. *Individual Liability Under the ADA*

Title I of the ADA generally prohibits certain "covered entities" from discriminating against disabled employees. 42 U.S.C. § 12112(a).[5] A covered entity is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person[.]" 42 U.S.C. § 12111(5)(A). A majority of circuit courts, including the Sixth Circuit, have held that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held individually liable under the ADA. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n. 1 (6th Cir. 1999) (citing *Wathen v. Gen. Electric. Co.*, 115 F.3d 400, 404-05 n. 6 (6th Cir. 1997)); *Roman-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43 (1st Cir. 2011); *Albra v. Advan, Inc.,* 490 F.3d 826, 830 (11th Cir. 2007); *Walsh v. Nev. Dep't of Human Res.,* 471 F.3d 1033, 1037–38 (9th Cir. 2006); *Fasano v. Fed. Reserve Bank of N.Y.,* 457 F.3d 274, 289 (3d Cir. 2006); *Corr v. MTA Long Island Bus,* 199 F.3d 1321 (Table), 1999 WL 980960, at *2 (2d Cir. Oct. 7, 1999) (unpublished); *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736 (10th Cir. 1999); *United States Equal Emp't Opportunity Comm'n v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir. 1995). Plaintiff's amended complaint does not state any facts from which the Court can infer that the individually named defendants otherwise qualify as "employers" subject to liability under the ADA and, as such, the claims must be dismissed.

---

[5] 42 U.S.C. § 12112(a) provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

Additionally, Dr. Cosner cannot be liable under the ADA as an "agent" of the University or as "covered entity," absent any allegation that he controlled Burnette's employment opportunities or that the University delegated such control to Dr. Cosner. *See Satterfield v. Tennessee*, 295 F.3d 611, 617-19 (6th Cir. 2002) (holding that private physicians, who contract with state employer to conduct physical examinations of employees, are not liable as "agents" or "covered entities," for ADA purposes, even though examination results are used to determine employment status, where such physicians neither control employee's employment opportunities, nor does state employer delegate such control). The amended complaint is devoid of any factual allegations that the University authorized Dr. Cosner to make employment decisions on its behalf or that he in fact had such control. Accordingly, the claims against Dr. Cosner must be dismissed for this additional reason.

### 3. Section 1983

Plaintiff's attempt to pursue his federal disability discrimination claims under § 1983 fails as well. The ADA provides a comprehensive statutory remedial scheme that creates the exclusive remedy for violation of that statute. *Cole v. Taber,* 587 F.Supp.2d 856, 863 (W.D. Tenn. 2008) ("Title VII and the ADA are independently actionable and have comprehensive remedial schemes. Violating them does not give rise to separate claims under § 1983."). In other words, § 1983 does not provide a remedy for violations of the ADA. *See Porter v. Ellis,* 117 F. Supp. 2d 651, 652 (W.D. Mich. 2000) ("Even if Plaintiff had a colorable claim under the ADA, he could not use section 1983 as a conduit for that claim."). Accordingly, plaintiff's § 1983 claims are dismissed in their entirety.

**B.  State Law Claims**

Defendants also move for dismissal of count five (invasion of privacy against all defendants) and count six (the tort of battery against defendants Callihan, Engle, and the University). The University defendants assert that they are protected from money damages by Eleventh Amendment sovereign immunity and by the immunity set forth in Ohio Rev. Code § 9.86. Further, to the extent these state claims may seek prospective injunctive relief against the individual University defendants (under the narrow exception set forth in *Ex parte Young*, 209 U.S. 123 (1908)), that would only be permitted to remedy "a continuing violation of federal law." *Carten, supra*; *see also Wigginton*, 21 F.3d at 736 (*Ex parte Young* determination turns on "whether the plaintiff seeks 'retroactive' or 'prospective' relief."). For the reasons set forth in the discussion above with respect to the federal claims, the University defendants are also entitled to dismissal of the state law claims in counts five and six.

Dr. Cosner moves for dismissal of the invasion of privacy claim against him because plaintiff has failed to allege that he made a public disclosure of plaintiff's medical records. To prevail on a claim for invasion of privacy under Ohio law, a plaintiff must prove, *inter alia*, a disclosure to the public at large. *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App. 3d 163 (Ohio Ct. App. 1985). Plaintiff has made no such showing here. Rather, he alleges that Dr. Cosner presented the report to defendant Engle, who shared it with defendants Viau, Foster, and Callihan and also with the University's Human Resource Department. This does not constitute a "public" disclosure.  Accordingly, Dr. Cosner is entitled to dismissal of the invasion of privacy claim against him.

## IV.      CONCLUSION

For all of the foregoing reasons, the motions to dismiss (Docs. 14, 15) are **GRANTED** and this case is **DISMISSED**.


**IT IS SO ORDERED**.


Dated: August 20, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

13